IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK BROGAN                          :
                                        :
                 Plaintiff,             :
        v.                              :        3:14-CV-1690
                                        :        (JUDGE MARIANI)
TUNKHANNOCK TOWNSHIP, et al.            :
                                        :
                 Defendants.            :

## MEMORANDUM OPINION

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendants Tunkhannock Township and Police Officer

John Benjamin Zdaniewicz's Partial Motion to Dismiss Plaintiff's Complaint (Doc. 8).

On August 28, 2014, Plaintiff, Patrick Brogan, filed a Complaint in the above-

captioned matter (Doc. 1) and subsequently filed an Amended Complaint on September 2,

2014 (Doc. 3) naming as defendants Tunkhannock Township, John Benjamin Zdaniewicz,

and James Sebolka.  Plaintiff's Amended Complaint sets forth five counts: unlawful seizure

and search in violation of the Fourth Amendment against Tunkhannock Township and

Zdaniewicz (Count I); excessive force in violation of the Fourth and Eighth Amendments

against Tunkhannock Township and Zdaniewicz (Count II); First Amendment Retaliation

against Tunkhannock Township and Zdaniewicz (Count III); violation of Plaintiff's

constitutional rights due to inadequate supervision/hiring/training against Tunkhannock

Township (Count IV); and assault and battery against Sebolka (Count V).

Defendants Tunkhannock Township and Officer Zdaniewicz moved to partially

dismiss the Amended Complaint on September 22, 2014. (Doc. 8). Defendant Sebolka

also moved to dismiss the Amended Complaint (Doc. 10), which the Court will address in a

separate opinion. The parties have fully briefed the motion, and it is now ripe for decision.

For the reasons set forth below, the Court will grant in part and deny in part Tunkhannock

Township and Officer Zdaniewicz's motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint alleges the following facts:

On or about June 26, 2014, at approximately 12:15 a.m., Plaintiff Patrick Brogan, a

65-year old man, and his wife were sleeping in their home when they were awoken by noise

coming from outside. (Doc. 3, ¶¶ 1, 6). Plaintiff, in his pajamas, went outside and saw his

neighbor, Defendant James Sebolka working on a diesel tractor outside his home. (*Id*. at ¶¶

7, 9). At the same time, Brogan saw a Tunkhannock Township police cruiser stop at the

end of his property and Defendant John Benjamin Zdaniewicz, a Tunkhannock Township

police officer, exit his police vehicle and go onto Sebolka's property. (*Id*. at ¶¶ 3, 8, 11).

Brogan walked through his yard and approached the police cruiser, waiting at the

cruiser to speak with Officer Zdaniewicz. (*Id*. at ¶¶ 10, 12). Sebolka told Brogan to "get the

fuck out of here, asshole." (*Id*. at ¶ 13). Zdaniewicz and Sebolka went to another

neighbor's residence and soon after Sebolka returned to where Brogan was waiting, and

again stated "get the fuck out of here" and then "viciously attacked and beat" Brogan. (*Id*. at

¶¶ 14, 15).  Officer Zdaniewicz then tased Brogan, causing Brogan to slam off the police

cruiser and fall to the ground at which point Officer Zdaniewicz handcuffed Brogan while he

was on the ground.  (Doc. 3, ¶ 16).

Subsequently, two Pennsylvania State Troopers arrived on scene and helped

Brogan sit up on the ground.  One of the troopers and Brogan's wife then helped Brogan to

his feet and he was transported by ambulance to Tyler Memorial Hospital where the Taser

dart was removed from his body.  (*Id*. at ¶¶ 17, 18).  Brogan was not arrested or taken to

the Tunkhannock Township police department on this day.  (*Id*. at ¶ 19, 23).

Plaintiff alleges that prior to this incident, in or around September or October of 2013,

at approximately 11 p.m., Brogan contacted authorities about Sebolka "creating excessive

noise due to him working on diesel tractor trailer outside his home."  (*Id*. at ¶ 32).  In

response, Officer Zdaniewicz came to Brogan's home and told him and his wife that they

were a nuisance, that he would not put up with them calling the police and if they kept it up,

they would be arrested.  (*Id*. at ¶ 33).  Plaintiff and his wife consequently met with the

Tunkhannock Township Chief of Police wherein they related to him this experience.  (*Id*. at

¶ 35).

## III.  STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

3

aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

### A. Plaintiff's Prayers for Relief for Punitive Damages

Each count of Plaintiff's Amended Complaint contains a prayer for relief for punitive damages. Defendants contend that this prayer for relief must be dismissed in Counts I-IV because punitive damages under 42 U.S.C. § 1983 cannot be awarded against a municipality or against a police officer in his official capacity. (Doc. 8, at 7 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)). Plaintiff concedes that punitive damages are not recoverable against a municipality, rather only arguing that he is seeking

5

punitive damages against Zdaniewicz in his individual capacity. (Doc. 14, at 5). This

assertion is supported by the caption of the Amended Complaint which states that the action

is being brought against Zdaniewicz in his individual capacity whereas there is no reference

to any claim being brought against the officer in his official capacity.

   The Supreme Court has emphasized that suits against state actors in their official

capacity "generally represent only another way of pleading an action against an entity of

which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d

301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d

114 (1985)). In other words:

> Suits against state officials in their official capacity therefore should be treated
> as suits against the State.   Indeed, when officials sued in this capacity in
> federal court die or leave office, their successors automatically assume their
> roles in the litigation. . . . Personal-capacity suits, on the other hand, seek to
> impose individual liability upon a government officer for actions taken under
> color of state law. Thus, on the merits, to establish personal liability in a §
> 1983 action, it is enough to show that the official, acting under color of state
> law, caused the deprivation of a federal right.

*Id*. Further, previous decisions

> make[] clear that the distinction between official-capacity suits and personal-
> capacity suits is more than a mere pleading device.   State officers sued for
> damages in their official capacity are not "persons" for purposes of the suit
> because they assume the identity of the government that employs them.   By
> contrast, officers sued in their personal capacity come to court as individuals.

*Id*. at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105

L. Ed.2d 45 (1989)) (internal alterations, citations, and quotation marks omitted).

Thus, Plaintiff's prayers for relief for punitive damages can only survive in Counts I-III with respect to the claims against Officer Zdaniewicz in his individual capacity. The request for punitive damages in Count IV, which is brought only against the township, will be stricken entirely. Consequently, Defendants' motion to dismiss Plaintiff's prayers for relief in Counts I-III will be denied but only to the extent that Plaintiff may seek punitive damages against Zdaniewicz in his individual capacity. Defendants' motion will be granted as to Count IV.

### B. *Monell* Liability

Defendants argue that "[t]o the extent that Plaintiff claims *Monell* liability against Tunkhannock Township, Plaintiff's claims in Counts I, II, and III, should be dismissed as a matter of law." (Doc. 8, at 7).

Counts I-III against Tunkhannock Township and Officer Zdaniewicz arise out of 42 U.S.C. § 1983. To succeed on a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate the violation of a right protected by the Constitution or laws of the United States, committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc). Section 1983 is not in itself a source of substantive rights, instead providing a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L. Ed.2d 791 (1985). Therefore, in evaluating a § 1983 claim, a Court must first "identify the exact contours of the underlying right said to have been violated" and determine

7

"whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

A municipality may be held liable under § 1983 when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers", including "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. As the Third Circuit has observed:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the

8

> inadequacy of existing practice so likely to result in the violation of
> constitutional rights, that the policymaker can reasonably be said to have
> been deliberately indifferent to the need.

*Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal citations and quotation marks omitted).

Defendants' brief argument on this important point contends that the Amended Complaint does not "point to the existence of an unconstitutional custom or policy" of the Township and lacks any averment that Officer Zdaniewicz was acting in accordance with a custom or policy implemented by the Township. (Doc. 8, at 8). However, when looking at the entirety of Plaintiff's Amended Complaint, it specifically states that the Township (1) engaged in an official policy, custom, and practice when it failed to train officers on the proper use of a Taser gun (Doc. 3, ¶ 2); (2) had a policy, practice, regulation or custom of giving minimal, if any, training on the usage of the Taser (*id.* at ¶ 39); and (3) as a result of the policy, practice, regulation, or custom, and Zdaniewicz's actions in accordance therewith, "Plaintiff was subjected to constitutional deprivations of his right to be free from unlawful search, seizure, arrest and his bodily integrity, security and liberty was violated" (*id.* at ¶ 41).

Plaintiff's *Monell* claims are thus based on a theory of a policy or custom of not adequately training officers on the use of a Taser or a complete failure to train, specifically as to the proper use of a Taser. At the pleading stage, the factual allegations in Counts I and II, asserting violations of the Fourth Amendment, adequately satisfy the requirements of

both the first or third category for *Monell* liability outlined in *Natale*. Viewing the well-pleaded facts in the light most favorable to the Plaintiff, the Township maintained a custom, practice, or policy of not providing its police officers with adequate training on the use of Taser guns, and the inadequacy of the existing training practices as to these weapons was so likely to result in the violation of constitutional rights, including unlawful search and seizure and/or the use of excessive force, that the Township may be said to have been deliberately indifferent to the need for more training.

Nonetheless, Defendants are correct that Plaintiff has failed to put forth sufficient facts to establish *Monell* liability in Count III for First Amendment Retaliation. Plaintiff's brief in opposition to Defendants' motion argues that the Amended Complaint "allege[s] facts that constitute *Monell* liability based on a failure to train theory." (Doc. 14, at 5). As explained above, the Court agrees with this assertion to the extent that it applies to a failure to train on the proper use of a Taser. However, properly alleging facts sufficient to establish *Monell* liability for a failure to train as to the proper use of a Taser has no relation to the existence of a custom, policy, or practice which, at least in the present case, could plausibly lead to a First Amendment violation. Even drawing all reasonable inferences in favor of the Plaintiff, the Amended Complaint fails to put forth sufficient facts to support an allegation that the Township maintained or supported a policy or custom of retaliation for protected First Amendment activities.

10

Consequently, Defendants' motion to dismiss the *Monell* claims against

Tunkhannock Township in Counts I and II of Plaintiff's Amended Complaint will be denied.

However, Plaintiff's *Monell* claim against the Township in Count III will be dismissed without

prejudice.

## C. Due Process Claims

Defendants next argue that Plaintiff's Fourteenth Amendment due process claims

asserted in Counts I and II should be dismissed because they are subsumed by his Fourth

Amendment claims asserted within these same Counts.  (Doc. 8, at 8-9).  While Defendants

are correct on this point, *see, e.g. U.S. v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219,

137 L.Ed.2d 432 (1997) ("[I]f a constitutional claim is covered by a specific constitutional

provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the

standard appropriate to that specific provision, not under the rubric of substantive due

process")[1], Plaintiff does not directly dispute Defendants' contention.  Instead, Plaintiff

states that he has "labeled his claims as Fourth Amendment" and therefore "this issue is

moot since Plaintiff is only seeking recovery under the Fourth Amendment for these two (2)

Counts as labeled." (Doc. 14, at 6).

---

[1] *See also, Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[We] hold that *all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

The Court notes that Plaintiff did label both Counts I and II as Fourth Amendment claims, but the actual content of both Counts seemingly allege both Fourth Amendment and Fourteenth Amendment claims. Count I alleges that Plaintiff was "deprived . . . of his Due Process rights found in the Fourteenth Amendment" and Count II states that "the excessive force . . . was a violation of [Plaintiff's] Fourth, Eighth, Fourteenth Amendments" and that "as a direct and proximate result of the excessive usage of force by Defendant Zdaniewicz, Plaintiff suffered deprivation of his constitutional right to bodily integrity in violation of Fourth, Eighth, Fourteenth Amendments." (Doc. 3, ¶¶ 24, 27, 28). Any claims under the Fourteenth Amendment are stricken to the extent that they present an attempt to state separate and independent causes of action from those that have been properly alleged under the Fourth Amendment.

Given the well-established law on this issue and Plaintiff's apparent concession that he is not entitled to include a Fourteenth Amendment claim within Counts I and II, the Court will grant Defendants' request to dismiss with prejudice any perceived Fourteenth Amendment claims within these two Counts.[2]

### D. First Amendment Retaliation

In order to prevail on a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in a constitutionally protected activity; (2) that the government

---

[2] Defendants also argue that Plaintiff's Eighth Amendment claim, contained in Count II, should be dismissed with prejudice. (Doc. 8, at 10). In response, Plaintiff states that he is withdrawing the label "Eighth Amendment" and concedes that "his claims for excessive force are founded under the Fourth Amendment." (Doc. 14, at 6). In light of Plaintiff's admission, the Eighth Amendment claim asserted in Count II is dismissed with prejudice.

responded with retaliation; and (3) that the protected activity caused the retaliation.  *See*

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004); *Herman v. Carbon Cnty.*,

248 Fed.Appx. 442, 444 (3d Cir. 2007); *Gallis v. Borough of Dickson City*, 2006 WL

2850633, \*4 (M.D. Pa. 2006).

"To establish the causation element of a retaliation claim, a plaintiff must prove that

the exercise of his First Amendment rights 'played some substantial role' in motivating the

adverse action." *Conklin v. Warrington Twp.*, 2007 WL 4248214, \* 3 (M.D. Pa. 2007), *aff'd*,

304 Fed.Appx. 115 (3d Cir. 2008).  "The temporal proximity of an adverse action to a

plaintiff's exercise of his First Amendment rights is probative of the causation element of a

retaliation claim." *Id.* (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)).

However, "timing plus other evidence may be an appropriate test where the temporal

proximity is not so close as to be 'unduly suggestive.'" *Farrell v. Planters Lifesavers Co.*,

206 F.3d 271, 280 (3d Cir. 2000).

Defendants argue that "the time lapse between the alleged protected activity and

Plaintiff's arrest [is] too great to establish causation" and that "Plaintiff has failed to establish

that his arrest and resulting conviction lacked probable cause." (Doc. 8, at 11).  However,

Plaintiff's First Amendment retaliation claim is not based on Plaintiff's arrest and/or

conviction.[3]  Rather, Plaintiff alleges that Officer Zdaniewicz "shot his Taser at Plaintiff,

---

[3] While the briefs of Defendants Tunkhannock Township and Officer Zdaniewicz as well Sebolka both reference Plaintiff's arrest and conviction, Plaintiff's Amended Complaint makes no reference to these subsequent events and they can therefore not form the basis for any of Plaintiff's claims nor Defendants' motion to dismiss.

13

handcuffed him and caused him injury in direct retaliation for having reported wrongdoing and complaining to Defendant Zdaniewicz's boss about his misconduct." (Doc. 3, ¶ 36).

While temporal proximity is only one evidentiary basis upon which to establish causation, and Plaintiff therefore encourages the Court to look beyond the approximately eight months which elapsed between the purported constitutionally protected activity and alleged retaliatory action, Plaintiff makes no factual assertions that could plausibly demonstrate causation. The temporal proximity alone between Plaintiff's meeting with the Tunkhannock chief of police in late 2013 and Officer Zdaniewicz's actions on June 26, 2014, is too remote to establish causation. Plaintiff properly argues that whether the protected activity was a substantial factor in the alleged retaliatory action is a question of fact (Doc. 14, at 6-7(citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)), but he has failed to allege any facts, other than those of late-2013 and of the night of June 26, 2014, which may establish or plausibly infer a cause of action for First Amendment retaliation. Plaintiff specifically cites several cases wherein Courts discussed the fact that a pattern of antagonism may demonstrate a causal nexus between the protected conduct and the retaliatory actions. (*Id.*). However, these cases are inapplicable in the present matter where Plaintiff has not alleged a single action, let alone an antagonistic action, in the intervening eight month period.

Consequently, Defendants' motion to dismiss Count III for failure to state a claim will be granted, but with leave for Plaintiff to amend.

## V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Partial Motion to Dismiss Plaintiff's Complaint (Doc. 8).  A separate Order follows.

Robert D. Mariani
United States District Judge