# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK BROGAN | : |
| Plaintiff, | : |
| v. | :    3:14-CV-1690 |
| | :    (JUDGE MARIANI) |
| TUNKHANNOCK TOWNSHIP, et al. | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is the "Consolidated Motion of Defendant, James Sebolka, Pursuant to Rule 12(b)(1), 12(b)(6) and 12(e) Seeking to Strike Off Plaintiff's Complaint or, in the Alternative, for a More Definite Statement" (Doc. 10).

On August 28, 2014, Plaintiff, Patrick Brogan, filed a Complaint in the above-captioned matter (Doc. 1) and subsequently filed an Amended Complaint on September 2, 2014 (Doc. 3) naming as defendants Tunkhannock Township, John Benjamin Zdaniewicz, and James Sebolka. Plaintiff's Amended Complaint sets forth five counts: unlawful seizure and search in violation of the Fourth Amendment against Tunkhannock Township and Zdaniewicz (Count I); excessive force in violation of the Fourth and Eighth Amendments against Tunkhannock Township and Zdaniewicz (Count II); First Amendment Retaliation against Tunkhannock Township and Zdaniewicz (Count III); violation of Plaintiff's

constitutional rights due to inadequate supervision/hiring/training against Tunkhannock Township (Count IV); and assault and battery against Sebolka (Count V).

Defendant Sebolka filed his Rule 12 motion on September 23, 2014. (Doc. 10). Defendants Tunkhannock Township and Officer Zdaniewicz also moved to partially dismiss the Amended Complaint (Doc. 8) which the Court will address in a separate opinion. The parties have fully briefed the motion, and it is now ripe for decision. For the reasons set forth below, the Court will deny Sebolka's motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint alleges the following facts:

On or about June 26, 2014, at approximately 12:15 a.m., Plaintiff Patrick Brogan, a 65-year old man, and his wife were sleeping in their home when they were awoken by noise coming from outside. (Doc. 3, ¶¶ 1, 6). Plaintiff, in his pajamas, went outside and saw his neighbor, Defendant James Sebolka working on a diesel tractor outside his home. (Id. at ¶¶ 7, 9). At the same time, Brogan saw a Tunkhannock Township police cruiser stop at the end of his property and Defendant John Benjamin Zdaniewicz, a Tunkhannock Township police officer, exit his police vehicle and go onto Sebolka's property. (Id. at ¶¶ 3, 8, 11).

Brogan walked through his yard and approached the police cruiser, waiting at the cruiser to speak with Officer Zdaniewicz. (Id. at ¶¶ 10, 12). Sebolka told Brogan to "get the fuck out of here, asshole." (Id. at ¶ 13). Zdaniewicz and Sebolka went to another neighbor's residence and soon after Sebolka returned to where Brogan was waiting, and

2

again stated "get the fuck out of here" and then "viciously attacked and beat" Brogan. (*Id.* at ¶¶ 14, 15). Officer Zdaniewicz then tased Brogan, causing Brogan to slam off the police cruiser and fall to the ground at which point Officer Zdaniewicz handcuffed Brogan while he was on the ground. (Doc. 3, ¶ 16).

Subsequently, two Pennsylvania State Troopers arrived on scene and helped Brogan sit up on the ground. One of the troopers and Brogan's wife then helped Brogan to his feet and he was transported by ambulance to Tyler Memorial Hospital where the Taser dart was removed from his body. (*Id.* at ¶¶ 17, 18). Brogan was not arrested or taken to the Tunkhannock Township police department on this day. (*Id.* at ¶ 19, 23).

Plaintiff alleges that prior to this incident, in or around September or October of 2013, at approximately 11 p.m., Brogan contacted authorities about Sebolka "creating excessive noise due to him working on diesel tractor trailer outside his home." (*Id.* at ¶ 32). In response, Officer Zdaniewicz came to Brogan's home and told him and his wife that they were a nuisance, that he would not put up with them calling the police and if they kept it up, they would be arrested. (*Id.* at ¶ 33). Plaintiff and his wife consequently met with the Tunkhannock Township Chief of Police wherein they related to him this experience. (*Id.* at ¶ 35).

### III. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. ANALYSIS

### A. The Court has jurisdiction over the state law claim against Defendant Sebolka.

Pursuant to 18 U.S.C. § 1367,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18 U.S.C. § 1367(a).

The Supreme Court has set forth three requirements which must be met for a federal court to exercise supplemental jurisdiction over state law claims.

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (internal citation omitted). "Under *Gibbs*, a federal court should consider and weigh

5

in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id*.

Here, it is undisputed that the federal claims brought against the other defendants confer subject matter jurisdiction on the Court. Sebolka only places at issue whether a sufficient factual nexus exists between the claim against him and those brought under federal law against his co-defendants.[1] (Doc. 10, ¶¶ 16-25).

"The test for a 'common nucleus of operative facts' is not self-evident. Indeed, '[i]n trying to set out standards for supplemental jurisdiction and to apply them consistently, we observe that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike.'" *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988), *cert. denied*, 489 U.S. 1078, 109

---

[1] Section 1367 also provides specific exceptions to supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction over a state law claim if:
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
18 U.S.C. § 1367(c). None of these exceptions are applicable in the present case.

S.Ct. 1528, 103 L.Ed.2d 834 (1989)). While complete congruity between the operative facts is not necessary, "mere tangential overlap of facts is insufficient." *Nanavati*, 857 F.2d at 105. "Supplemental claims 'may be separate claims, *or* they may merely be different "counts" or "grounds" or "theories" in support of what is essentially a single claim.' 28 U.S.C. § 1367 Practice Commentary (emphasis added). The claims need only revolve around a central fact pattern." *White v. Cnty. Of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993). *See also*, *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) ("We have routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped.").

In this case, the facts supporting Plaintiff's federal and state claims are so significantly intertwined that they may be said to form a common factual nucleus. Brogan's original complaint against Sebolka in September or October of 2013 regarding "excessive noise due to [Sebolka] working on diesel tractor trailer outside his home" forms both the basis of Plaintiff's First Amendment claim and demonstrates possible animosity between Brogan and Sebolka, a relationship which may have contributed to the events of June 26, 2014. Furthermore, Plaintiff's ability to succeed on his excessive force and illegal search and seizure claims necessarily depends on what happened between Brogan and Sebolka on June 26. Plaintiff's Amended Complaint alleges that after Sebolka swore at Plaintiff and "viciously attacked and beat" him, Officer Zdaniewicz tased Plaintiff and handcuffed him. (Doc. 3, ¶¶ 15, 16). Sebolka claims that the Officer was required to intervene after the

Plaintiff began harassing and "aggressively approach[ing]" Sebolka. (Doc. 10, ¶¶ 10-12). Regardless of how the interaction between Brogan and Sebolka is characterized, Officer Zdaniewicz's actions were presumably at least in part the result of this interaction. Thus, an assessment of the reasonableness of the Officer's actions is dependent on what transpired between Plaintiff and Defendant Sebolka. As such, Sebolka and Officer Zdaniewicz's actions were part of chain of inextricable events and cannot be separated from one another. To properly evaluate the veracity of Plaintiff's claims, a jury must be informed of the same set of facts which led up to both Sebolka's alleged attack and Officer Zdaniewicz's purported Fourth Amendment violations. "[T]he values of judicial economy, convenience, fairness, and comity" therefore heavily weigh in favor of trying Plaintiff's state law claim together with the substantial federal claims.

The Court will therefore not dismiss Count V on the basis of lack of supplemental jurisdiction.

**B. Plaintiff has set forth a cause of action upon which relief can be granted.**

Count V, alleges assault and battery by Sebolka and requests in the prayer for relief "all remedies available pursuant to state law, including but not limited to emotional distress, punitive damages, injunction against future acts, attorney fees and costs, pre-and post-interest, and delay damages." (Doc. 3, at 12). Defendant moves for the dismissal of Count V on the basis that Plaintiff has not set forth a cause of action upon which relief can be granted. (Doc. 12, at 8-12). Specifically, Sebolka alleges that Plaintiff has failed to allege

8

that he suffered any bodily injury as a result of the alleged confrontation with Sebolka and that Plaintiff has not stated a cause of action for the first four categories of damages requested in the prayer for relief. (*Id.*).

### 1. Assault and Battery

In actuality, Count V of Plaintiff's Amended Complaint comprises two separate tort theories. To state a claim for assault, Pennsylvania law requires a showing of "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960); *see also* Restatement (Second) of Torts § 21(1) (1965). "[T]he actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so." *Id.* To establish a claim of battery, a person must act intending to cause a harmful or offensive contact with another person, or an imminent apprehension of such contact, and an offensive contact with the person is the direct or indirect result. *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990); Restatement (Second) of Torts § 18(1) (1965).

Plaintiff has clearly set forth sufficient facts to properly allege both assault and battery. The Amended Complaint alleges that Sebolka "viciously attacked and beat" Brogan and "struck him violently" (Doc. 3, ¶¶ 15, 46, 48). Defendant argues that Plaintiff's claim must fail because he has not alleged that he suffered any bodily injury as a result of the confrontation. (Doc. 12 at 8). This argument necessarily can only be applied to the battery

9

claim, leaving the Court to conclude that Defendant is not challenging Plaintiff's claim for assault. Nonetheless, Sebolka's argument is unsuccessful for two reasons. First, a plaintiff is not required to show actual physical injury to establish a battery, only an unpermitted and therefore "offensive" contact. *Montgomery v. Bazaz-Sehgal*, 742 A.2d 1125, 1131 (Pa. Super. Ct. 1999), *aff'd*, 798 A.2d 742 (Pa. 2002); *see also, Bowman v. Home Life Ins. Co.*, 243 F.2d 331 (3d Cir. 1957) (insurance agent who represented himself as a doctor and performed an "intimate examination" upon a mother and daughter constitutes "offensive bodily contact" sufficient to establish liability for a battery). Allegations in the present case of a "vicious" attack and beating certainly establish unwanted and offensive contact, even in the absence of a specific allegation of a resulting physical injury. Second, while Defendant is correct that Plaintiff did not plead the existence of an actual bodily injury, it is entirely plausible to infer that being struck, beaten, and "viciously" attacked would result in a physical injury. For Defendant to say otherwise at this stage in the proceedings borders on desperation.

As a result, the Court will not dismiss Plaintiff's claim for assault and battery based on a failure to state a cause of action upon which relief can be granted.

### 2. Plaintiff's Prayer for Relief

Defendant Sebolka seemingly misinterprets Plaintiff's pleadings in Count V, arguing that Plaintiff's request for damages in the form of "emotional distress, punitive damages, injunction against future acts, [and] attorney fees" found in the prayer for relief (Doc. 3 at

12), must be dismissed because Plaintiff has not stated a cause of action for any of the aforementioned categories (Doc. 12 at 9-12). The Federal Rules of Civil Procedure merely require that a pleading contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). The Court deems Plaintiff's prayer for relief in Count V to be just and proper. Plaintiff's requests in his prayer for relief are not "claims" within the meaning of Rule 8(a)(3); rather, they are simply the form of relief demanded as part of the titled claim. Plaintiff's allegations of assault and battery are broad enough to encompass each type of relief requested. While the Court is not expressing an opinion as to whether Brogan is entitled to each of the aforementioned categories of damages as a matter of law, we decline to strike any of Plaintiff's prayer for relief in this Count because a determination of what damages are available to Brogan cannot be determined at this time.

### C. Plaintiff will not be directed to submit a more definite statement.

The clear text of Federal Rule of Civil Procedure 12(e) states that a party may move for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The rule "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." *Schaedler v. Reading Eagle Publ'n*, 370 F.2d 795, 798 (3d Cir. 1966). "Motions for a more definite statement are not viewed with favor and should be granted only if the allegations

11

contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it." *Wilson v. U.S.*, 585 F.Supp. 202, 205 (M.D.Pa. 1984).

Sebolka's motion for a more definite statement rests on the basis that he is "entitled to know, at the outset of this litigation, where the Plaintiff alleges he was struck" and that he is entitled to know the basis for the claims for emotional distress, injunctive relief, punitive damages, and attorney's fees. (Doc. 10, ¶¶ 38-42). The Court has already addressed the propriety of the categories of damages requested in the prayer for relief and need not do so again. With respect to Defendant's argument that a more definite statement is required which includes a specific allegation of where Plaintiff was struck, such an argument is meritless. Rule 8 only requires that a party put forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Count V, sets forth facts to put Sebolka on notice that he allegedly "violently and without provocation attacked" Brogan, that Sebolka intended to cause Brogan bodily harm, and the day and time of this alleged attack. Even if the Court were to assume that Plaintiff's Amended Complaint omits one or more facts that Defendant deems important, in light of the facts that are asserted, to suggest that Defendant is unable to file a responsive pleading in the absence of an assertion as to what part of Plaintiff's body was supposedly struck is hypercritical. Whether Plaintiff was struck in the head, arm, leg, or elsewhere is largely irrelevant to Sebolka's ability to adequately respond to the allegations against him.

Therefore, Sebolka's motion for a more definite statement will be denied.

## V. CONCLUSION

For the foregoing reasons, the Court will deny the "Consolidated Motion of Defendant, James Sebolka, Pursuant to Rule 12(b)(1), 12(b)(6) and 12(e) Seeking to Strike Off Plaintiff's Complaint or, in the Alternative, for a More Definite Statement" (Doc. 10). A separate Order follows.

_____
Robert D. Mariani
United States District Judge