IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK BROGAN        :

          Plaintiff,       :

v.                      :      3:14-CV-1690

                        :      (JUDGE MARIANI)

TUNKHANNOCK TOWNSHIP, et al.    :

          Defendants.      :

**FILED
SCRANTON**

MAR 2 1 2018

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 96) by

Magistrate Judge Carlson, in which he recommends that the motion to dismiss (Doc. 56) and

motion for summary judgment (Doc. 75) by Defendants Tunkhannock Township and Officer

Zdaniewicz be treated as a motion for summary judgment and that the motions be granted

and summary judgment be entered in favor of these defendants. Plaintiff Patrick Brogan has

filed Objections (Doc. 97) to the Magistrate Judge's R&R and a brief in support of the

Objections (Doc. 98), to which Defendants Tunkhannock Township and Officer Zdaniewicz,

as well as Defendant James Sebolka, have filed responses (Docs. 99, 100, 101).[1]

On August 28, 2014, Plaintiff, Patrick Brogan, filed a Complaint in the above-

captioned matter (Doc. 1) and subsequently filed an Amended Complaint on September 2,

2014 (Doc. 3) naming as defendants Tunkhannock Township, John Benjamin Zdaniewicz,

---

[1] Defendant Sebolka also filed a motion for summary judgment (Doc. 74) which the Magistrate
Judge analyzed in a separate R&R (Doc. 95). The Court will address that R&R in a separate Order.

and James Sebolka.  The defendants filed motions to dismiss (Docs. 8, 10), and the Court granted in part and denied in part the Township and Officer Zdaniewicz's motion (Doc. 51) and denied Sebolka's motion in its entirety (Doc. 53).

Plaintiff filed a Second Amended Complaint on August 26, 2015 setting forth five counts: unlawful seizure and search in violation of the Fourth Amendment against Tunkhannock Township and Zdaniewicz (Count I); excessive force in violation of the Fourth Amendment against Tunkhannock Township and Zdaniewicz (Count II); First Amendment Retaliation against Tunkhannock Township and Zdaniewicz (Count III); violation of Plaintiff's constitutional rights due to inadequate supervision/hiring/training against Tunkhannock Township (Count IV); and assault and battery against Sebolka (Count V).  (Doc. 54). Defendants Tunkhannock Township and Officer Zdaniewicz thereafter filed a second Motion to Dismiss.  (Doc. 56).

Following the completion of discovery, Tunkhannock Township and Officer Zdaniewicz filed a motion for summary judgment (Doc. 75) requesting that summary judgment be granted in their favor on Counts I-IV.  James Sebolka also filed a motion for summary judgment (Doc. 74) requesting that summary judgment be entered in his favor on Count V.  The Court subsequently referred the motions to Magistrate Judge Carlson for the preparation of Reports and Recommendations on Defendants' pending motions.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Plaintiff objects to the Magistrate Judge's R&R "in its entirety." (Doc. 97, at ¶1). Specifically, Plaintiff (1) objects to the Magistrate Judge's consideration of Plaintiff's conviction of the charge of harassment by physical contact (18 Pa. C.S. §2709(a)(1)) when analyzing Plaintiff's claims against the defendants; (2) asserts that the Magistrate Judge erred in his analysis of Plaintiff's First Amendment claim; (3) argues that he never brought a false arrest claim, but rather an unlawful search and seizure claim, which was not analyzed in the R&R; (4) asserts that Officer Zdaniewicz is not entitled to qualified immunity on Plaintiff's excessive force claim; and (5) argues that he established a *Monell* claim against the Township. (Doc. 98).[2] The Court will address these arguments in turn.

---

[2] Although not briefed, Plaintiff's Objections also include a paragraph stating that he "objects since the Report and Recommendation never addressed Plaintiff's final claim of assault and battery against Sebolka" (Doc. 97, at ¶ 5). The R&R at issue in this opinion only addressed the Township and Zdaniewicz's motion for summary judgment, and therefore an analysis of the assault and battery claim

Plaintiff's first Objection is that the Magistrate Judge was incorrect to consider the fact that he was convicted of harassment because harassment is "not a crime", but rather a summary offense. (Doc. 98, at 4). Plaintiff fails to cite a single federal case in support of his contention that his conviction for a summary offense is inadmissible and cannot be considered by the Court when analyzing whether a party has presented evidence to establish his or her constitutional claim sufficient to defeat summary judgment. Rather, Courts within this Circuit have repeatedly considered a person's conviction or guilty plea on a summary offense when determining whether that person can prevail on certain constitutional claims. *See e.g., Deitrick v. Costa,* 2014 WL 268681 (M.D. Pa. 2014)[3]; *Hayhurst v. Upper Makefield Twp.,* 2007 WL 1795682 (E.D. Pa. 2007) (finding on summary judgment that Plaintiff's claim for unlawful arrest pursuant to § 1983 was barred by *Heck v.*

---

against Sebolka was unnecessary. Further, Magistrate Judge Carlson issued a separate R&R specifically addressing Sebolka's motion for summary judgment and the assault and battery claim (*see* Doc. 95). Plaintiff's Objection is thus completely misplaced and without merit.

[3] In *Deitrick*, the Magistrate Judge, in a Report and Recommendation adopted by the District Court, explained:

> In dealing with the question of whether entering guilty plea to a summary offense runs afoul of the *Heck* doctrine, the Court has held that pleading guilty to a summary offense does invalidate § 1983 claims of false arrest. *Kokinda v. Breiner,* 557 F.Supp.2d 581, 593 (M.D.Pa. 2008) (Caputo, J.) (finding that a plaintiff's guilty plea to the state law charge of harassment, and his concession that the underlying arrest was based on probable cause invalidated his claim of false arrest under § 1983); *see also, Piazza v. Lakkis,* No. 3:11-CV-2130, 2012 WL 2007112 *6 (M.D.Pa. June 5, 2012) (finding that a § 1983 claim of unlawful arrest is invalidated by an underlying conviction of a summary offense). Deitrick's claim is *Heck*-barred because the state court records clearly show that Deitrick pleaded guilty to the charges of harassment and disorderly conduct, and there is no indication that it has been reversed, expunged, or otherwise invalidated.

*Deitrick,* 2014 WL 268681 at *12.

4

*Humphrey* because a ruling in Plaintiff's favor on that claim "would call into question the validity of her disorderly conduct conviction."); *Burke v. Twp. Of Cheltenham*, 742 F.Supp.2d 660 (E.D. Pa. 2010) (finding that Plaintiff's claims against certain defendants for false arrest, false imprisonment, unlawful restraint in handcuffs, and a lack of probable cause to arrest Plaintiff, were barred by *Heck* due to Plaintiff's guilty plea for disorderly conduct). As a result of the law in this Circuit, and Plaintiff's inability to direct the Court to any federal cases which support his position, the Court rejects Plaintiff's first Objection. Magistrate Judge Carlson was correct in considering Plaintiff's conviction for harassment to the extent that the conviction may invalidate certain claims that Plaintiff has brought against the defendants.

The Court will next address Plaintiff's fourth Objection, which asserts that the Magistrate Judge erred in finding that Officer Zdaniewicz is entitled to qualified immunity on Plaintiff's excessive force claim (Count II) (Doc. 98, at 11-16), as the analysis of Count II is pertinent to the analysis of several of Plaintiff's other Objections.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal citations omitted); *see also, Saucier v. Katz*, 533 U.S. 194 (2001). The District Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Plaintiff asserts that Officer Zdaniewicz's alleged use of excessive force violated Plaintiff's Fourth Amendment rights. More specifically, the right at issue is the right to be free from the use of a taser by a police officer while engaged in a physical altercation with another individual. (*See also*, Doc. 96, at 39).[4] Here, in light of the circumstances presented to Officer Zdaniewicz at the time of the alleged use of excessive force, the Court finds that there is no material factual dispute which could allow a trier of fact to find that Officer Zdaniewicz unlawfully used excessive force against Plaintiff, and, even if a violation did occur, the right at issue was not "clearly established".

A police officer's "use of force contravenes the Fourth Amendment if it is excessive under objective standards of reasonableness." *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir. 2002) (citing *Graham v. Connor,* 490 U.S. 386 (1989)). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances

---

[4] Plaintiff's Second Amended Complaint alleges that "the excessive usage of force was directed against Plaintiff's person, and the shooting of a Taser intentionally at Plaintiff when he has committed no crime, was a violation of his Fourth Amendment to the United States Constitution." (Doc. 54, at ¶ 28). Although Plaintiff mentions in this Count that Brogan was also handcuffed, his excessive force claim is premised on the use of a taser by Officer Zdaniewicz. Plaintiff's Objections to the Magistrate Judge's analysis of the excessive force claim, however, impermissibly attempt to re-focus this Court's inquiry by largely focusing on the Officer's use of handcuffs on Brogan after he had been tased.

6

confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Reasonableness must be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Relevant factors in determining whether an officer's use of force is objectively reasonable include:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Kopec*, 361 F.3d at 776-777 (internal citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. 386, at 396-397.

Examining the "totality of the circumstances" in the present case, several facts are undisputed. Because the incident at issue occurred after midnight on June 26, 2014, it was dark outside. It is further undisputed that Officer Zdaniewicz was the only police officer on the scene prior to, and at the time, he observed the altercation between Brogan and Sebolka and deployed his taser. Plaintiff also does not dispute Defendants' statement of material fact that while Officer Zdaniewicz was speaking with Mr. Billhime, Brogan and Sebolka's neighbor, the Officer "heard screaming and observed Plaintiff and Mr. Sebolka

7

engaged in a physical altercation." (Doc. 75-2, at ¶ 61; Doc. 86, at ¶ 61) (citing Dep. of Zdaniewicz, at 62-63).

Furthermore, despite the conflicting testimony of Brogan, Sebolka, and Zdaniewicz, as to what occurred immediately prior to Brogan being tased and handcuffed, the police car dash video of the incident is instructive in presenting the Court with certain other irrefutable facts. *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007) (Finding the Court "should have viewed the facts in the light depicted by the videotape"). The video definitively reflects the following sequence of events, as relevant to the issue of Officer Zdaniewicz's use of excessive force:

- Officer Zdaniewicz is first seen running towards Brogan and Sebolka approximately eight to ten seconds after the first indication of an altercation between the two men on the video.

- After running for six to seven seconds, Officer Zdaniewicz pulls out his taser while continuing to run towards Brogan and Sebolka.

- Approximately three seconds later, Brogan is struck by one prong of the taser, and falls to the ground one to two seconds after being tased.

- The entire time that Officer Zdaniewicz is seen on the video running towards Brogan and Sebolka, Brogan is to the side of/behind Sebolka, with his arms around Sebolka, whose arms are pinned against his chest by Brogan.

(*See* Police Dash-Cam video, 4:36:44-4:37:05).[5]

Thus, the undisputed facts demonstrate that, in the middle of the night and while the only officer on the scene, Officer Zdaniewicz heard "screaming" and then observed a physical altercation between Brogan and Zdaniewicz during which Brogan had his arms around Sebolka and was pushing him against the police car. These facts alone demonstrate that, looking at the totality of the circumstances, Officer Zdaniewicz was placed in a position of having to make a quick judgment. He was presented with a situation in which it appeared possible, if not likely, that Sebolka was being subjected to an assault and battery, and that Brogan was therefore a threat to Sebolka's safety and possibly the Officer's own safety if not subdued. Officer Zdaniewicz was placed in a position wherein he needed to quickly assess sudden and violent circumstances, determine who the aggressor was, and make a split-second judgment as to how to end the fight and prevent the commission of further harm. Therefore, although there is no evidence that Officer Zdaniewicz had reason to believe that Brogan may be armed, a factor which mitigates the need to use force, here, the Officer, acting alone, needed to contend with two men engaged in a physical altercation, there was a clear possibility that the person subject to the police action was violent or dangerous, and the Officer had limited time in which to decide what actions were necessary, all factors which weigh in favor of finding the use of force to be reasonable.

---

[5] The relevant dash-cam video footage, when viewed, at times appears as having been recorded at a different time, *e.g.*, 4:34:51-4:35:27.

Assuming the use of some force was reasonable, the question is whether the *amount* of force used by Officer Zdaniewicz was reasonable. Officer Zdaniewicz was presented with a situation in which he had limited options to end a violent altercation. Although it is disputed whether Officer Zdaniewicz ordered Brogan and Sebolka to stop fighting, or said anything else prior to tasing Brogan, even assuming that he did not, the Officer deployed the taser only once. Plaintiff fails to offer any record evidence as to what other, less forceful, means were available to Officer Zdaniewicz to end the physical altercation. Additionally, even if Officer Zdaniewicz did have other, less forceful, means at his disposal to end the altercation, the very fact that a physical altercation was taking place before him, in which he had reason to believe that Brogan was the aggressor,[6] further supports the reasonableness of his actions in using a taser to subdue Brogan. *See Saucier,* 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."). Finally, although Brogan was taken to the hospital, he admitted that he was not seriously injured at the time as a result of being tased. (*See e.g.,* Dep. of Brogan, at 130-132, 142-143, 152-156). *See Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997) (finding

---

[6] In Officer Zdaniewicz's Field Report Narrative, detailing the events of June 26, 2014, the Officer states that he "observed Brogen [*sic*] to have Sebolka pinned against this officer's patrol unit." (Doc. 75, Ex. 26, at 2). During his deposition, Officer Zdaniewicz repeated his assertion that he observed Brogan and Sebolka engaged in a physical altercation and that Brogan "had Mr. Sebolka pinned on the hood" of the police cruiser. (Dep. of Zdaniewicz, at 63-64). Brogan also testified that "when the State Police got there, I heard one of the State Police say to Officer Zdaniewicz why did you tase him[, a]nd I heard Officer Zdaniewicz say, I thought he was the aggressor." (Dep. of Brogan, at 126). Although it is not this Court's province to weigh the credibility of Officer Zdaniewicz in determining whether he believed that Brogan was the aggressor in the altercation, the dash-cam video supports the proposition that a reasonable officer could believe that Brogan was the aggressor in the altercation viewed by Officer Zdaniewicz.

that although the absence of physical injury does not necessarily signify that the force has not been excessive, "the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality.").

To the extent that Plaintiff is now arguing that the excessive force consists of Officer Zdaniewicz handcuffing Brogan after tasing him, this argument fails for two reasons. First, this claim did not form the basis of Plaintiff's excessive force claim in his Second Amended Complaint. Second, for substantially the same reasons that the Officer's actions in tasing Brogan were reasonable under the totality of the circumstances, Officer Zdaniewicz's use of handcuffs was also reasonable. In the middle of the night and alone on the scene, Officer Zdaniewicz applied the handcuffs immediately following the altercation, and Brogan was only handcuffed for ten minutes (see Police Dash Video). At that time, having viewed the altercation between Brogan and Sebolka, the Officer could still have a reasonable belief that Brogan may pose a danger to Sebolka or the officer himself, and, because Officer Zdaniewicz was alone, needed to take precautionary measures to ensure that he had control over the situation and that no further violence ensued.

Even if the Court were to assume, arguendo, that there was a genuine dispute of fact as to whether Officer Zdaniewicz violated Brogan's Fourth Amendment right by using excessive force, the Court must determine whether Officer Zdaniewicz is entitled to qualified immunity. Turning to the second prong of the Saucier analysis, the Court must determine whether the right not to be tased under these, or similar circumstances, was clearly

established in June of 2014. *See, e.g., Dull v. W. Manchester Twp. Police Dep't*, 604

F.Supp.2d 739, 748-749 (M.D. Pa. 2009) ("The court may eschew difficult constitutional

issues and award qualified immunity to a defendant if it is apparent that the defendant did

not violate rights that were *clearly established* at the time the defendant acted.").

Here, the Court's agrees with the Magistrate Judge's analysis finding that Officer

Zdaniewicz is entitled to qualified immunity. As the Magistrate Judge stated, "even if a jury

were to conclude that Brogan's constitutional rights were violated by being subjected to a

taser during his arrest, the court could not find that a reasonable officer in Officer

Zdaniewicz's position would have known 'beyond' debate that attempting to use his taser

once on Brogan, who appeared to be assailing another person, and was in fact convicted of

harassment by physical contact, constituted a clearly established use of excessive force."

(Doc. 96, at 39-40). Furthermore, despite Plaintiff's citation to a number of cases, many of

which are not within the Third Circuit, he fails to direct the Court to any cases wherein a

similar factual situation occurred, i.e., where a police officer, alone at night, views a physical

altercation between two men in which one of the men appears to be the clear aggressor,

and deploys his taser a single time in an attempt to stop the physical altercation.

The Magistrate Judge's analysis and recommendation and this Court's

Memorandum Opinion on this issue are buttressed by the Third Circuit's admission in 2016,

two years after the events in question, that it "has not yet spoken in a precedential opinion

about taser use." *Estep v. Mackey*, 639 F.App'x 870, 874 n.4 (3d Cir. 2016). Thus, in June,

2014, the Third Circuit had yet to clearly or definitely establish when the use of a taser may constitute a constitutional violation of the Fourth Amendment.[7]

With respect to Plaintiff's claim against the Township for excessive force, because the Court has found that Officer Zdaniewicz did not engage in an unreasonable use of force, Plaintiff's claim against the Township must also be dismissed. However, even assuming that a dispute of material fact exists as to the reasonableness of the force, and acknowledging that a municipal entity is not entitled to qualified immunity and can therefore still be held liable for an officer's use of excessive force, for the reasons set forth in Magistrate Judge Carlson's R&R discussing Plaintiff's *Monell* claim, Plaintiff has failed to present any record evidence to create a triable issue of fact as to the Township's liability.

For the aforementioned reasons, the Court will overrule Plaintiff's Objections and adopt Magistrate Judge Carlson's R&R with respect to the grant of summary judgment to Defendants Zdaniewicz and Tunkhannock Township on Count II of Plaintiff's Second Amended Complaint.

Plaintiff's third Objection asserts that despite the Magistrate Judge's analysis of a false arrest claim, he never brought such a claim, but rather an unlawful search and seizure claim, that was not analyzed in the R&R. (Doc. 98, at 3). Count I of Plaintiff's Second Amended Complaint is entitled "Unlawful Seizure and Search [in] Violation of the Fourth Amendment" (Doc. 54, at ¶¶ 21-25) and states that Brogan "was unlawfully searched and

---

[7] This is not to say that no reasonable officer could have violated a person's "clearly established" constitutional rights through the use of a taser in 2014. However, the present action does not constitute such a situation.

seized on or about June 26, 2014, at approximately 12:25 a.m., when Defendant Police

Officer Zdaniewicz knew that he did not have probable cause to search, seize, arrest or tase

Brogan" (id. at ¶ 22). Plaintiff later alleges in this Count that "Defendant Zdaniewicz['s]

actions constitute a seizure in violation of the Fourth Amendment . . . ." (Id. at ¶ 24).

Preliminarily, neither Plaintiff's Second Amended Complaint, nor his brief in

opposition to summary judgment (Doc. 85) or Objections to the R&R (Doc. 98) explain the

basis for his allegation that he was searched. Rather, as stated immediately above, the

Complaint alleges that Officer Zdaniewicz's actions constituted a seizure. Further, Plaintiff's

brief in opposition to summary judgment argues that "Plaintiff has stated an unreasonable

seizure claim" and only sets forth the applicable law governing an unreasonable seizure in

support of his argument that summary judgment should not be granted with respect to

Count I. (See Doc. 85, at 6-8). The Court therefore deems Plaintiff's unlawful search claim

to have been abandoned and will analyze Plaintiff's claim as one only for unlawful seizure.

"To recover under 42 U.S.C. § 1983, [the Plaintiff] must establish that a state actor

engaged in conduct that deprived him of 'rights, privileges, or immunities' secured by the

constitution or laws of the United States." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir.

2000). The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no warrants shall issue, but upon probable cause, supported by oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.

> Police encounters with citizens fall into one of three broad categories, each with varying degrees of constitutional scrutiny: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests. The first type of encounter does not implicate the Fourth Amendment. . . . The second category (i.e., brief seizures or *Terry* stops) requires a showing that the officer acted with reasonable suspicion. . . . And the third category (i.e., full-scale arrests) is proper only when an officer has probable cause.

*U.S. v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (internal citations and quotation marks omitted).

Plaintiff contends that Officer Zdaniewicz's actions constituted an arrest, and Magistrate Judge Carlson accepted this assertion throughout the R&R. Although the events of June 26, 2014, are more indicative of a brief seizure than an arrest, for purposes of this Memorandum Opinion, and viewing all facts in the light most favorable to the plaintiff, the Court will assume that Brogan was arrested. Here, it is undisputed that Brogan was tased and then handcuffed by Officer Zdaniewicz following an altercation with Sebolka. Because a seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*", *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original), the evidence demonstrates that Brogan was temporarily seized when he was tased and handcuffed, thereby restraining Plaintiff's liberty. The question thus becomes whether that seizure was reasonable, *see id.* at 599 ("'[s]eizure' alone is not

enough for § 1983 liability; the seizure must be 'unreasonable'"), which, in this case,

requires a showing that Officer Zdaniewicz had probable cause to arrest Brogan.[8]

Although Plaintiff asserts that he is not bringing a false arrest claim, Magistrate

Judge Carlson's thorough analysis explaining the basis for Officer Zdaniewicz's probable

cause to arrest Brogan is equally applicable to Plaintiff's unlawful seizure claim. Because

the plaintiff fails to address the issue of probable cause anywhere in his Objections, and the

Court agrees with the Magistrate Judge's analysis and conclusion, the Court will adopt this

---

[8] To the extent that Plaintiff was not arrested, but instead only briefly seized, it is clear that Officer Zdaniewicz acted with reasonable suspicion. The Third Circuit has explained the "reasonable suspicion" standard as follows:

> Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. The officer must simply have some objective justification for the stop and must be able to articulate more than an unparticularized suspicion or hunch that the suspect is engaged in criminal activity. When making reasonable suspicion determinations, reviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. We give considerable deference to police officers' determinations of reasonable suspicion.

Brown, 765 F.3d at 290 (internal citations and quotation marks omitted).

Here, there is no question that an altercation was occurring between Brogan and Sebolka at the time Officer Zdaniewicz approached the men and removed his taser from his belt. The police dash video further demonstrates that Brogan had his arms around Sebolka and that Sebolka's arms were pinned against his chest by Brogan at the time that the Officer ran towards, and reached, the men. Even viewing the evidence in the light most favorable to Brogan, giving deference to Officer Zdaniewicz's determinations, the undisputed evidence of record demonstrates that the Officer had a reasonable suspicion that Brogan was engaged in criminal activity, for example, assault and battery. The fact that Brogan was not ultimately charged with such crimes, and that there exist factual disputes as to who commenced the physical altercation, does not affect a finding here that the Officer had an objective justification for seizing Brogan by use of a taser and handcuffs.

16

finding with respect to probable cause without further discussion.[9] Thus, because Officer Zdaniewicz had probable cause to arrest Brogan, summary judgment must be entered in favor of him on Count I of Plaintiff's Second Amended Complaint.

With respect to Plaintiff's claim against the Township for unlawful search and seizure, because the Court has found that summary judgment should be entered in favor of Officer Zdaniewicz on this Count, Plaintiff's claim against the Township must also be dismissed.

For the aforementioned reasons, upon review of the R&R, defendants' motion for summary judgment, the briefs in support and opposition, and the evidence of record, summary judgment will be entered in favor of Defendants on Count I of Plaintiff's Second Amended Complaint (Fourth Amendment Unlawful Search and Seizure).[10]

Plaintiff also objects to the R&R on the basis that the Magistrate Judge erred in his First Amendment analysis. (Doc. 98, at 5-10). Plaintiff's Objections assert that his First Amendment rights were violated on two occasions: (1) when Brogan called the police station to complain about Sebolka and Zdaniewicz purportedly threatened to arrest Brogan later that same day if Brogan continued to call in complaints; and (2) when Plaintiff "was engaged in his constitutional right to wait by the police cruiser to speak with Defendant

---

[9] Plaintiff's brief in opposition to summary judgment does assert that Officer Zdaniewicz lacked probable cause and that Brogan "did not commit a crime nor has he ever been convicted of a crime." (See Doc. 85, at 6-8). This argument fails because there is no legal requirement that Plaintiff was ultimately actually committing a crime or was subsequently convicted of a crime in order for a police officer to have probable cause to seize an individual.

[10] Although Plaintiff explicitly states that he did not bring a false arrest claim (Doc. 98, at 11), to the extent that he had argued otherwise, the Court adopts the Magistrate Judge's findings with respect to any potential false arrest or malicious prosecution claims.

Zdaniewicz" and Zdaniewicz thereafter took some unidentified action against Brogan.[11] (Doc. 98, at 5-10).

Plaintiff's Second Amended Complaint asserts that Officer Zdaniewicz and/or Tunkhannock Township retaliated against Brogan in the following ways: (1) when "Plaintiff Brogan contacted authorities due to Defendant Sebolka creating excessive noise due to him working on diesel tractor trailer outside his home . . . [and] Defendant Zdaniewicz arrived at Plaintiff's home and told Plaintiff and his wife that they were a nuisance and that he would not put up with them calling the police and if they kept it up, they would be arrested" (Doc. 54, at ¶¶ 32-33); (2) when Plaintiff met with Township Police Chief Stanley Ely to report that Zdaniewicz had "threatened to arrest them", "in direct retaliation for having lodged a criticism concerning Defendant Zdaniewicz's behavior, [and] the Police Chief required Plaintiff to put his complaint in 'writing'" (id. at ¶¶ 35-36); (3) when, "[o]n or about June 26, 2014, Defendant Zdaniewicz ignored Plaintiff when he passed him waiting by his Police Cruiser because Plaintiff had complained about Officer Zdaniewicz to the Police Chief [and a]t that same time, instead of telling Defendant Sebolka to stop using vulgar, offensive, and aggressive language at Plaintiff when Sebolka told Plaintiff to 'get the fuck out of here, asshole', Defendant Zdaniewicz said nothing, in direct retaliation for Plaintiff having complained about Officer Zdaniewicz to the Police Chief [and t]hereafter, instead of

---

[11] Plaintiff's Objections do not state what action(s) Officer Zdaniewicz took that Plaintiff believes demonstrate retaliation on that same day. Specifically, it is unclear in Plaintiff's Objections if Plaintiff is arguing that Zdaniewicz violated Plaintiff's rights when he purportedly: (1) did not immediately speak to Brogan upon arriving at the scene; (2) did not say anything when Sebolka swore at Brogan; (3) tased Brogan; (4) handcuffed Brogan; and/or (5) one or more of these events.

arresting Defendant Sebolka for assaulting a 65 year old man in his pajamas, Defendant Zdaniewicz shot his Taser at Plaintiff, handcuffed him and caused him injury in direct retaliation for having reported his wrongdoing and complaining to Defendant Zdaniewicz's boss about his misconduct" (*id.* at ¶¶ 40-42).

Upon review of the Second Amended Complaint, Plaintiff's current Objections, and all other relevant briefs and documents, Plaintiff's Objections with respect to the Magistrate Judge's First Amendment retaliation claim are without merit.

Preliminarily, Plaintiff does not object to the R&R's findings with respect to why Chief Ely's direction to Plaintiff to put his complaint about Officer Zdaniewicz in writing does not form the basis for a First Amendment retaliation claim, and the Court agrees with this analysis and adopts it without further discussion. (*See* Doc. 96, at 24-25).

With respect to Officer Zdaniewicz's purported threat to arrest Plaintiff if he continued to call the police station to complain about Sebolka, although Plaintiff randomly string-cites a number of cases, each of which the Court has reviewed, for the proposition that the threat of an arrest constitutes a retaliatory action for purposes of a First Amendment retaliation claim, each of these cases, with the exception of one, addresses retaliatory actions in terms of an arrest or prosecution, not solely the threat thereof. However, at first blush, although not binding on this Court, Plaintiff's reliance on *McCormick v. City of Lawrence*, 253 F.Supp.2d 1172 (D. Kan. 2003) appears relevant to this Court's analysis. In support of his position that Officer Zdaniewicz engaged in retaliatory conduct, Plaintiff relies on the Court's statement in

*McCormick* that "the court believes the threat of arrest by a police officer is exactly the sort of act that would deter a person of ordinary firmness from exercising his or her First Amendment right to orally challenge that officer," *McCormick*, 253 F.Supp.2d at 1196. (*See* Doc. 98, at 6). However, Plaintiff ignores that the plaintiff in *McCormick* was threatened with arrest three times over a twenty minute period, and the District Court found that:

> It was the *collective effect* of their threats of arrest that deterred Mr. McCormick's speech and therefore gave rise to his single injury. . . . Put another way, the court would conclude that any injury Mr. McCormick suffered from the 2:45 a.m. threat of arrest *standing alone* was *de minimis* because he was back protesting ten minutes later.

*McCormick*, 253 F.Supp.2d at 1192 (internal citation omitted)(emphasis added).

Here, viewing all facts in the light most favorable to Plaintiff and therefore accepting as true that Officer Zdaniewicz threatened to arrest Brogan if he continued to call the police station, the Court agrees with the Magistrate Judge that this speech was *de minimis* (*see* Doc. 96, at 22-23), and Plaintiff's Objections fail to provide any substantive argument or case law which would alter this Court's finding.[12]

---

[12] As Magistrate Judge Carlson noted:

. . . Brogan's September 2013 exchange with Officer Zdaniewicz, standing alone, cannot sustain a claim of constitutional dimension. The undisputed facts surrounding this episode reveal that the officer investigated a complaint leveled by Brogan, found it to be without merit, and had an animated discussion with Brogan in which the officer advised Brogan not to point his finger at him, and admonished him to refrain from placing meritless 911 calls in the future, since he could be cited for such conduct. Fairly construed, Officer Zdaniewicz's exchange with Brogan constituted nothing more than criticism, and verbal reprimands, actions which typically are considered *de minimis* and do not rise to the level of conduct which would deter a person of ordinary firmness from asserting his rights. See *Revell v. City of Jersey City*, 394 F. App'x 903, 906 (3d Cir. 2010); *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003).
(Doc. 96, at 22-23).

Additionally, as the Magistrate Judge noted when determining that there was no First Amendment violation, Officer Zdaniewicz's "threat" did not deter Brogan "in the slightest from voicing his concerns." (Doc. 96, at 23). Plaintiff argues that the Magistrate Judge incorrectly applied a subjective standard when finding Plaintiff's lack of deterrence demonstrated that no violation occurred. *See Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017) ("whether an act is retaliatory is an objective question. We ask whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred") (internal citation omitted). However, the Magistrate Judge's finding does not mean that he was applying a subjective standard in determining whether the conduct at issue in this case was sufficiently severe to deter a person of ordinary firmness from exercising his or her constitutional rights. Rather, the fact that Brogan immediately went to speak with Chief Ely is merely one indication that an objective person would not have been deterred by the Officer's statement. *See e.g., Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) ("The question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done"); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) ("While the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive"). Further, just as in *McCormick*, the fact that Brogan was undeterred further operates to show that Zdaniewicz's words were *de minimis*. Finally, the fact that Brogan immediately spoke to Chief Ely also

demonstrates that his speech was not, in fact, "chilled" in any way. *See e.g., Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (analyzing Plaintiff's First Amendment claim and finding that "although Singer alleges damage to his reputation, he has failed to allege with sufficient particularity any actual 'chilling' of his speech, or of his participation in the political process. While the vague allegations in his complaint might carry such a suggestion, Singer did not press this issue in the district court, nor did he advance any arguments in support of this particular claim on appeal. As a matter of fact, Singer continued to publish his newspaper.").[13]

---

[13] *See also, Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002):

Also with respect to the second element of the retaliation claim, the district court concluded that Keenan and Przybylski did not actually suffer an injury, inasmuch as they persisted in exposing and challenging the constable. We are mindful that § 1983 is a tort statute and that "[a] tort to be actionable requires injury," which, in this context, is the deprivation of a constitutional right. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). At the same time, "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* The district court correctly ruled that a retaliation claim requires some showing that the plaintiffs' exercise of free speech has been curtailed. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000); *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir.1992); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989); *but see Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."); *Smith [v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)], ("The focus ... is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.").

The district court clearly erred, however, in finding that the plaintiffs made no showing of an injury. In his affidavit, Keenan explained that after the incidents in June 1997 and December 1997, he was afraid to travel in Precinct 5 and he "backed off from direct involvement in helping expose unlawful practices" in the constable's office. (Keenan goes on to say, though, that he videotaped one instance of suspected unlawful activity and filed a complaint with a state agency against Constable Tejeda.) Przybylski made similar assertions in his affidavit. Thus, both plaintiffs have stated, without contradiction, that they

22

With respect to Plaintiff's assertion in his Objections that he has established a First Amendment retaliation claim because Officer Zdaniewicz took retaliatory action against Brogan in response to Plaintiff "engag[ing] in his constitutional right to wait by the police cruiser to speak with Defendant Zdaniewicz", this argument is contrary to Plaintiff's pleadings as well as applicable law. First, Plaintiff has failed to point to any case law that standing next to a police cruiser is a constitutionally protected activity. Second, Plaintiff's Second Amended Complaint clearly alleges at least three times that the First Amendment violation arising out of the events of June 26, 2014, was "because Plaintiff had complained about Officer Zdaniewicz to the Police Chief" and that Officer Zdaniewicz had "caused [Brogan] injury in direct retaliation for having reported his wrongdoing and complaining to Defendant Zdaniewicz's boss about his misconduct." Thus, Plaintiff's assertions in his Objections that "the Magistrate Judge erred in suggesting the protected activity was the

---

curtailed their protected speech activities in response to the defendants' actions. At this stage of the litigation, the plaintiffs have sufficiently averred that they were deprived of a constitutional right, even though they were not completely silenced. A required showing of actual injury does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation.

*Id.* at 259-260.

In the present case, at the summary judgment stage, Plaintiff must have provided some evidence to demonstrate an injury, even if minimal. Brogan has failed to make this required showing. Plaintiff's brief in opposition to summary judgment, as well as Plaintiff's Objections, fail to set forth any evidence of injury as a result of Officer Zdaniewicz's alleged statement, and a review of Brogan's deposition testimony does not reveal any asserted injury or harm suffered. In fact, when asked why he did not submit a written complaint to Chief Ely about Zdaniewicz's statement, Brogan stated that he and his wife "both stated that we realized it's not an easy job. And our daughter's in law enforcement. And we just thought that maybe he was having a bad day. And we thought we'd just let it go. . . ." (Dep. of Brogan, at 91). This statement further illustrates Brogan's lack of injury in that he did not take Zdaniewicz's statement seriously and assumed he was just "having a bad day."

speech in the Fall of 2013" (Doc. 98, at 9) is without any foundation. Rather, the Magistrate Judge's analysis was based on Plaintiff's allegations in the Second Amended Complaint. Plaintiff cannot now attempt to create new legal arguments and assertions contrary to his pleadings, in a desperate effort to salvage a claim that he had never previously set forth. For the reasons set forth in the R&R, Plaintiff has failed to demonstrate a genuine factual dispute that he suffered retaliation in violation of the First Amendment due to Officer Zdaniewicz's actions on June 26, 2014.

For the foregoing reasons, as well as those set forth in the R&R, summary judgment will be entered in favor of Defendants on Plaintiff's First Amendment retaliation claim (Count III).

Finally, Plaintiff argues that the R&R incorrectly finds that he did not establish a *Monell* claim against the Township. In Plaintiff's Second Amended Complaint, he asserts a "violation of Brogan's Constitutional rights" due to "inadequate supervision/hiring/training" by Tunkhannock Township. (Count IV). Plaintiff's *Monell* claim is premised on the allegation that Officer Zdaniewicz was provided with a taser "despite actual notice that Defendant Zdaniewicz was not a candidate for using a Taser because of his propensity to use excessive force against the public", that the Township knew the Officer "could not be trusted and needed supervision since Plaintiff and his wife complained about Defendant Zdaniewicz to the Police Chief", and that the Township "had a policy, practice, regulation or custom of giving minimal, if any, training on the usage of the Taser", which resulted in Plaintiff to be subjected

to "constitutional deprivations of his right to be free from unlawful search, seizure, arrest and his bodily integrity, security and liberty. . . ." (Sec. Am. Compl., Doc. 54, at ¶¶ 47-54).

Although somewhat disjointed, Plaintiff's objections to the R&R with respect to the *Monell* claim appear broadly to fall into two categories: (1) that summary judgment should be denied because the Township "provides zero training on use of force and use of force in connection with a taser"; and (2) that summary judgment should be denied because of an alleged unwritten policy/practice/custom requiring citizens to complete a written citizen complaint form. (Doc. 98, at 17-21).

Plaintiff's assertion that summary judgment should be denied because of an alleged policy requiring citizens to complete a written citizen complaint form fails for several reasons. First, for the reasons discussed in the R&R when recommending the grant of summary judgment to Officer Zdaniewicz and the Township on Plaintiff's First Amendment retaliation claim (Count III), the policy stated by Chief Ely to Brogan was not unconstitutional. Second, Plaintiff's *Monell* claim in Count IV never pleads or references this allegedly unconstitutional policy/custom; rather, the *Monell* claim is only premised on the failure to train Officer Zdaniewicz on the use of a taser and to properly supervise him.

As to Plaintiff's assertion that Officer Zdaniewicz was not adequately trained or supervised in the use of a taser, and more broadly, the use of excessive force, the Court agrees with the number of sound reasons set forth by the Magistrate Judge in finding that the Township is entitled to summary judgment on Plaintiff's *Monell* claim.

However, in addition to the Magistrate Judge's analysis, the Court is compelled to note that Plaintiff's characterization of the facts do not accurately reflect the evidence of record. Although Plaintiff asserts that the Township "provides zero training on use of force and use of force in connection with a taser" (Doc. 98, at 18), the record demonstrates that this is a misleading statement. Officer Zdaniewicz testified that he received use of force training in the Act 120 Police Academy training and that he continued to receive use of force training at the yearly MPOETC updates. (Dep. of Zdaniewicz, at 11-12). Although Officer Zdaniewicz admitted that he never received training in the use of a taser during his Act 120 training (*id.* at 11), he stated that he was trained by Patrolman Papi, another police officer on the force, when he was hired by the Township, and thereafter received "a yearly update" which consisted of several hours of classroom time and a "practical exercise" (*id.* at 18-19; *see also, id.* at 25-26). Officer Zdaniewicz also stated that he took a test following his initial taser training. (*Id.* at 19). According to Township Police Chief Ely, Patrolman Papi was one of two police officers on the force who was a certified taser instructor; to become a certified trainer, Papi had to attend a two-day course by "Taser International"; and as a trainer, Papi was required to get recertified every two years. (Dep. of Ely, at 36-38).

Aside from the personal training that Officer Zdaniewicz received on the use of force and use of a taser, the Township also had several policies in place with respect to the use of force and tasers at the time that Officer Zdaniewicz was employed by the Township. (*See* Tunkhannock Township Police Policy Manual, "Use of Force", § 2-04 (Doc. 75, Ex. 8);

Tunkhannock Township Police Department, Use of Neuro-Muscular Incapacitation Device (NMI) (Doc. 75, Ex. 9); Tunkhannock Township Police Department Policy Manual (2014), "Use of Neuro-Muscular Devices", § 11-04 (Doc. 75, Ex. 10, 11)).[14]

In support of his failure to train claim, Plaintiff also cites to *Geist v. Ammary*, 40 F.Supp.3d 467 (E.D. Pa. 2014), for the proposition that summary judgment should be denied in this case. Plaintiff quotes one sentence in the District Court's opinion, which states that "[r]esolving all disputes in favor of the plaintiff, a jury could find that the Use of Force Policy as it related to Taser usage was inadequate in guiding officers on when it was appropriate to use the Taser as a tool of force." (Doc. 98, at 18)(quoting *Geist*, 40 F.Supp.3d at 496). While this quote appears on point, *Geist* presented a very different factual situation, wherein a *minor* was tased in her *lower abdomen and groin*, and the taser at issue had been allegedly deployed approximately 150 times in the five month period between the time the officers were trained in taser usage and the time the plaintiff was tased. The material issues in dispute in that case when determining whether *Monell* liability may attach therefore included whether the police officers had been adequately trained with respect to the appropriate place on the body to tase a person and when the use of a taser on a minor was appropriate, whether the Use of Force Policy's lack of guidance on when to use a taser encouraged officers to overuse tasers as a tool of force, and whether, despite the large number of tasing incidents which

---

[14] Further, to the extent that the plaintiff continues to reiterate his claim that his expert's opinion should somehow operate to defeat summary judgment, in a case such as this, the Court agrees with Magistrate Judge Carlson that "the conclusions drawn by the plaintiff's retained expert represent, at most, a dispute over best practices, but do not rise to proof of deliberate indifference to constitutional violations." (Doc. 96, at 49 n.4).

resulted in serious injuries to tased persons, the police department even reviewed these incidents and why it failed to amend or revise the Use of Force Policy to better guide the officers on the use of tasers. In the present action, Plaintiff has not set forth evidence that Officer Zdaniewicz deployed his taser in such a manner as to cause unnecessary pain or injuries to Brogan, that Officer Zdaniewicz, or any other officer on the force, had a practice of improperly using, or excessively using, his or her taser, or that the Township failed to review any use of a taser by a police officer or take corrective actions if necessary.

Thus, for the aforementioned reasons, as well as those set forth in the R&R, Plaintiff has failed to demonstrate a triable dispute of fact with respect to the existence of any municipal custom or policy which provided a direct causal link with any alleged constitutional violation. Nor has Plaintiff demonstrated a material dispute as to the Township's failure to train or supervise Officer Zdaniewicz. Summary judgment will accordingly be entered in favor of Tunkhannock Township on Plaintiff's *Monell* claim (Count IV).

### III. CONCLUSION

For the reasons set forth above, upon *de novo* review of the R&R (Doc. 96), the Court will adopt the R&R in its entirety. Summary judgment will be granted in favor of Defendants John Benjanim Zdaniewicz and Tunkhannock Township on Counts I-IV of the Second Amended Complaint. A separate Order follows.

Robert D. Mariani
United States District Judge